All right. Our first case this morning is No. 24-1623, Apple Inc. v. Smart Phone Technologies, Ms. McComas. Good morning. May it please the Court? Debbie McComas on behalf of Apple. This appeal relates to the dependent claims 2-4 and 15-20 of the 943 patent. There are two different combinations at issue here. The first is Byrne and the W-748, which relates to claims 3 and 4. And then the second is the Raleigh-Byrne combination, which addresses the rest of the dependent claims. I'm going to start with the Byrne-W-748 combination, unless the Court prefers that I take a different order. Now, with respect to this combination, it's helpful to put it in perspective that the challenged independent claims had already been found obvious by Byrne alone. So what claims 3 and 4 add to this is that the wireless device, which we've already established as Byrne, must be in further communication with a network switch box that is in turn configured to join a virtual network. That's all we're talking about here, is what we're talking about is joining a network switch box to be configured to join a virtual network. Does it need to be configured so that the actual device joins the virtual network? And here I'm just going to call that the telephone, because I think that that's reasonably clear. No, and that's the problem here, right? So this is, I guess, what I've been focusing on and want some help with. It does seem to me that the preferred reading of the claim language itself is this broader one. Only the switch box needs to join the virtual network. The telephone does not. But it seems to me that's not self-evidently clear and that one might read it to require the telephone to join the virtual network. And there are aspects of your petition, the relevant paragraph, I think it's 120, of your expert, of the patent, that kind of suggest that the telephone actually needs to be joining the virtual network. You didn't ask for a claim construction saying that that's not so, at which point, I guess my question is, why was it unreasonable for the Board to read your argument to be that the telephone has to join the virtual network? At which point, there's a problem of motivation and reasonable expectation of success that might not, in fact, be there if only the box needs to join the network. Do you understand my line of thinking? I do, Your Honor. And I appreciate the clarification of understanding where you're coming from. There's a lot to unpack there, so I'll work backwards with it. I think, first of all, I think Apple was very clear, if it wasn't clear in the petition, it's very clear by the reply that what we're talking about here is adding a VPN to the network switch box not to burn. That it wouldn't matter what the switch is. Well, I'm not quite sure that's quite the – that that way of putting it gets at the point. Of course, you're not adding a VPN to the particular device. The question is whether the device has to be working on that VPN. And the board's reasoning, I think, at its core on the – I'm going to put aside the reasonable expectation of success, which I think the board was weaker on. But on the motivation, I think the board's core reasoning was, you just haven't explained why anybody would be motivated to have the device work on the virtual network because it's all about security and this device, the particular device, has all the security you could possibly want. I understand that's the board's decision. I don't think it was Apple's position that you had to teach burn connecting to the VPN or that there had to be a reason for burn to be connected to a network switch box that was connected to the VPN. What was shown here – and it's helpful to kind of step back. If you look at what Smart Mobile's argument was in the Pat Oner response, it was really this microcell argument related to whether or not there was – it made sense to combine the W0748's network switch box with burn. That's really what the briefing went to for the most part. But when we get to – Counsel, do you at least agree that burn already implemented sufficient data encryption? Do you agree with that? Burn had some sort of encryption. But I think the evidence here that the board disregarded completely was that it wouldn't matter if there was already encryption on burn's cell phone. What we're talking about is encryption and the benefits of adding the VPN to the network as a whole. It's not duplicative, in other words. I'm sorry, can you say that again? It's not duplicative. The security provided by a VPN is not duplicative of the security provided by burn. As I understand it, the burn encryption is between the base station and the telephones, and that the VPN provides protection between the base station and the Internet. That's entirely correct. The fact that one of your devices that's joining the network has its own security doesn't take away from the need to have security for the network as a whole. I do want to add one more piece to that that I think maybe helps, Your Honor, with respect to our claims instruction as to what's being claimed here. Here, if you look at the 943 patent, there's no description of the 943 patent as to what a VPN is or how you apply it. And we know from the case law that you presume that one skilled in the art would know how to do that under those circumstances. I adverted to the possibility or to the idea that I think the Board was weaker on the reasonable expectation of success precisely for that reason. So it's really the motivation piece of the burn W0748 that I'm focusing on. I don't think you can look at those mutually exclusive from each other in this case. They are intertwined. The VPN was known. All the evidence is this is how it was always done. Of course you would add it. And the Board, because it was so focused on the teaching and burn, it really didn't address that evidence. So even if you, looking at it today, believe there was maybe some justification, which I'm not conceding, for the Board to go to look at what burn's teaching was, it couldn't do that exclusive of the overwhelming evidence of what a VPN taught and how common it was and how easy it was to imply. It was done. We're talking about a network here. What got added in 3 and 4 is a network, and a network that is called out to be tied to a VPN. What is your best support in saying to the record before us here for the proposition that you argued to the PTAB that there were benefits to overall network security in modifying W0748? And you're saying overall security meaning for the entire combination as opposed to adding it to. I think you can see from the reply, it's Appendix 462 to 464, and the Jensen Declaration that complements that at Appendix 2268 through 2269. And that's walking through the application of Paulson and how it would have taught and how it would have been necessary. I'm sorry. What was the Jensen Reply Declaration? 2268 through 2269. And then added to that, the questions came up during the oral hearing as well. I don't want to get ahead of you if you're pulling it up. You can keep going. We are pulling it up. Then when we get to the hearing at Appendix 569, there's further discussion here where there's further explanation. VPNs were well-known and conveniently implemented. And then that discussion further refers to the Exhibits 1072 and 1073, which are the supporting patents that I've already talked about how VPNs were commonly implemented and were necessary. I think this is a question you were asked before, but in any event, you said it picks up a little bit on Judge Dyke's question about where in Jensen or in either of your two filings with the Board, the petition or the reply, do you say there is a benefit to the VPN security between the base station and the Internet that is over and above the benefit of encryption between the handset and the base station, and that would supply a motivation to get to Claim 3? I don't think it's phrased as perfectly as you're phrasing it, because I don't think we agreed that we had to show a motivation over and above what Byrne taught. And as I stand here today, I still think PACT would say you don't have to show that. But I do think there is general evidence consistently saying this is how it was done, and what we're looking at, we do have evidence referenced in those citations that I just gave you, particularly 2268 through 69 at paragraph 28, I believe it's a holdover paragraph, that says, look, this is just one node that we're adding to our network, that you wouldn't take into account or you wouldn't be concerned about Byrne already having certain security in it, because what we're putting the VPN to is a broader network. And the phone, Byrne, is only going to be one node of that network. So you see that 2268 through 69 at paragraph 28, and that cites to Paulson, and then Paulson in turn refers to VPN networks connecting users to each other. Am I going too fast? You're not going too fast. I'm not sure I'm agreeing with what you're saying is here, but you're not going too fast. And then even back at paragraph 120, where we started, that the reference and the description of the application of VPN is a variety of network devices. You indicated it wasn't stated as cleanly as Judge Taranto stated, right? So you basically agreed that you don't ever come out and say it in the fashion that Judge Taranto indicated, correct? We don't come out and say, I want to be careful, because I believe our evidence was strong enough, but we do not say the perfect language that the board came out with in the final written decision, which is you don't have to just look at Byrne, because here are the teachings. What we said was here are the teachings, the teachings apply to a network, and here are the benefits to the network as a whole that's more than just Byrne. So what I cited to you would cover that. Well, you do explain that VPN provides security, right? Correct. Correct. As one of many motivations that you would apply. So even if Your Honors are struggling with the teaching of Byrne and the implication of the broader teachings, I think it would have been wrong to not consider this additional evidence in the teaching of, regardless of what Byrne is teaching me. And to be clear, Byrne just has its own encryption. That's not the same as encrypting and creating security for your network. And if my claim is telling me, add a VPN, and the prior art says, tells me that one skilled in the art would always add a VPN for one reason as security, then that should be enough. But it at least should have been enough for the Board to take that into consideration, and the Board didn't. I don't want to waste all my time. I think we should spend some time on the Byrne-Rawley combination. Thank you, Your Honors. And with respect to the Rawley-Byrne combination, here the Board denied solely because it found zero evidence of reasonable expectation of success. This is wrong because Apple's reasonable expectation of success wasn't limited to a phone, and that's where the Board went to and stayed. To be clear... Could we assume just hypothetically for the moment that we reject that argument, we think that the argument in evidence was limited to a phone, but you argue alternatively in the blue brief that even if that's the case, that there is still reasonable expectation of success for the combination, correct? Yes, sir. That's correct. That's what we argued even of. I find the Board's decision in this respect to be somewhat confusing because they say that Rawley and Byrne don't themselves provide the reasonable expectation of success, and then they say you didn't address why other evidence told you to be a reasonable expectation of success, yet I think you did provide such evidence. The question is, it seems to me, whether the evidence was adequate, but the Board's discussion of the adequacy of that evidence is sort of confusing... We agree. ...and not very precise. Yeah. We agree with that, Your Honor, that even if we're limited to the teaching of Rawley and Byrne in a phone, that there was evidence as to why there would be a reasonable expectation of success, and the Board certainly didn't consider it adequately. The Board doesn't even really explain, other than this size issue with respect to phone, we don't have an explanation as to why this evidence... But the size issue is a problem, isn't it, because Rawley is pretty complicated, and the idea of including that stuff in a phone could be difficult. Well, our evidence said otherwise. The evidence explained that... Where did your evidence address the size question? Well, at 474 through 476 in the reply, part of the discussion is why... This is in Volume I, 471? Yes, sir. And then the Jensen Declaration that corresponds to some of the citations I'm giving you, we've already summarized that in the blue brief at 62 to 63 and the gray brief at 30 through 31. If that's easier, I'm happy to take you there. So... So let me take you just for example.  At Appendix 475, portable mobile devices were not new and not so challenging to implement as to deter one skilled in the art from considering implementation of Rawley's techniques in a handheld device as an obvious solution. And then the citation there is back to Exhibit 1048, which is part of the Jensen Second Declaration. That does not focus on reasonable expectation of success. It's a very high-level statement about obviousness without breaking it down into, for our purposes, the two key pieces. I do think you have to go to what's being cited in the further explanation with the excerpt there to get the full import of the discussion. So I can take you, for example, to 2287 through 2297. One would have been prompted to modify Rawley's remote unit. I'm sorry. Paragraph 57 is where I started. For the apparent benefits. So that's the motivation, right? Indeed, Rawley's remote unit is exemplified as a vehicle unit, which is considered as a portable mobile device. So it starts by saying Rawley already has a portable mobile device. Where is the reasonable expectation of success discussion? Because I do see you taking us to the motivation to combine, but can you take us to the reasonable expectation of success portion? Yes, yes, yes. And it is intertwined in the discussion. But if you start at Appendix 473 through 476, and I'll highlight just a few of those for you because I know at this point I'm kind of reading to you. So still going back to your motivation to combine section, is that where you want us to go for this reasonable expectation? Yes. Reasonable expectation of success portion? Yes. They're in the same. They are discussed together. And let me walk you there quickly because I know I'm really burning my time at this point. If you look at, there is a discussion at the end of the reasonable expectation of success section. And it says, as explained above, referring back, it's referring back then to the entire discussion, motivation to combine, reasonable expectation of success, and in the petition, one skilled in the art would have recognized and found it obvious to implement the teachings of Raleigh and Byrne in a handheld device or other wireless communication devices. You're on Appendix 477, correct? Yes, ma'am. So if you look at the, it talks about, and you have to look at all of it together. I concede that. But they are referring back and says, as explained, a procedure would have recognized and found it obvious to implement the teachings of Raleigh and Byrne in a handheld device or other wireless communication device for numerous known benefits. So then you go back and it's referring, this is under the reasonable expectation of success. And if you go back, it's referring to the analysis and the motivation to combine. The citation that follows this is to Jensen's, let's call it his reply declaration at page 2296, paragraph 71. And I'm not quite sure that that gets you there. Well, that's fair, because the reason why these are combined the way they are in the is because they are responding to what that heading that's specific to reasonable expectation of success, I believe, is trying to respond specifically to the only argument patented or made, which was different than what the board found and what we're addressing here. So, but if you look at the, unfortunately, other than reading the whole thing to you, all I can say is it's in these two sections. And I'm clearly out of time. I see the paragraph on 477 beginning with patent versus petitioner's reasonable expectation of success analysis by referring to technical challenges. Yes, sir. And it talks about Dr. Kuklev, which was Smart Mobile's expert, admitting that there would have been ways to do it. Abundant advantages and motivations existed, which Dr. Kuklev didn't dispute, for one skilled in the art to implement the Raleigh-Byrne combination. In the time I have, I commend you to the briefing, which tries to summarize this evidence. We actually don't have any time. But we'll give you two minutes for rebuttal. Thank you, Your Honor. Mr. Graves. Thank you, ma'am. Pleased to court Philip Graves for Smart Mobile Technologies. So I'd like to start with the Raleigh-Byrne grounds, if the court would find that acceptable. Judge Toronto, you repeatedly, I think the entire panel repeatedly, asked my colleague for citations to evidence supporting a finding of a reasonable expectation of success. And what you received were citations to statements in their expert's declaration concerning motivation to combine. And that's all we have here. Well, I mean, that's not quite true, because that paragraph we were just looking at, 477, says Pat Nona addresses the petitioner's reasonable expectation of success analysis by referring to technical challenges, and then suggests that those could be overcut. I mean, that does seem to be addressing reasonable expectation of success, right? Well, the language that my colleague pointed you to actually addresses motivation to combine. Now, it's important to understand that in the briefing below, and in particular in the reply brief and the expert's second declaration, what you see is that the argument is clearly broken out into two sections. There is a section on motivation to combine, and there is a section on reasonable expectation of success. The same is true for their expert's declaration. And in the briefing, you know, they pointed the board to the paragraphs of the expert's declaration concerning motivation to combine. And for reasonable expectation of success, they didn't point to those paragraphs of the declaration. They pointed to the paragraphs of their expert's declaration concerning reasonable expectation of success. And those paragraphs are 68 through 71. So all of the citations in Apple's briefing to the statements in their expert's declaration, in paragraphs 56, 57, 60, none of that was cited to the board for reasonable expectation of success. It's the problem that it wasn't cited, or the problem is that it doesn't address reasonable expectation? It's twofold, Your Honor. It's both. Number one, it wasn't cited. And the board has regulations requiring parties to explain the significance of the evidence that they cite to the issues. In fact, there are two separate sections in the CFR concerning that, and there's a section in the rules of practice for the board. And these are not just empty formalities. The board is flooded with petitions, IPR petitions, and, you know, the board needs the parties to be clear in their arguments in order to perform its tasks efficiently, right? So here, Apple told the board where to look.  So I'm just a little bit confused about this. So in the section of the reply, of Apple's reply, so the lawyer's document, it cites to, and I'm looking here at 477 and 478, this is under the heading reasonable expectation of success.  So they're addressing that. And it cites to, at the end, this is right smack in the middle of, I guess, 477. It cites to the paragraphs of the Jensen reply that themselves are under the heading reasonable expectation, 68 through 71. 477, line 4, 68, 69, line, I don't know, 10, I'm making that up, paragraph 70, and then 478, line 1, paragraph 71. So it did cite to those paragraphs. One can argue about whether those paragraphs are sufficient to support reasonable expectation, but I guess I heard you saying that in the board, Apple didn't cite to the reasonable expectation of success paragraphs. No, that's not what I said. What I said was that the paragraphs to which Apple is pointing you now on appeal, paragraphs 56 through 67, right, those, that subset of the paragraphs to which Apple is pointing and which my colleagues repeatedly cited to you as support for reasonable expectation of success, Apple didn't cite to any of those paragraphs for reasonable expectation of success for the board. They cited to them for motivation to combine. Can you address, though, whether or not paragraph 68 through, I believe it was 70, that you were just discussing with Judge Toronto, whether or not they actually do go to reasonable expectation of success? Like, let's address that.  So for the most part, they don't. Those paragraphs, well, first of all, 68 and 69 are really attorney argument concerning the ---- Where do we find these? So paragraphs ---- 2295. Thank you. So paragraphs 68 and 69 of their expert second declaration constitute attorney argument concerning the import, if any, of the level of detail contained in the 943 specification. Now, we addressed this in the briefing. We pointed out that the cases that they cite are not applicable here. You know, number one, simply because they're procedurally distinguishable from our situation here for a variety of reasons addressed in the briefing. And also, I think more importantly, because here factually there's a significant difference from the cases that were cited in the briefing concerning the board trying to read in some sort of implied representation from the level of detail in the specification, which is that the claims here do not require the inclusion of Raleigh's, you know, very complex space-time coding system and algorithm into the claimed invention. Okay. But that's the problem, that you pointed to a reasonable expectation of success or lack of reasonable expectation of success. But I'm just not quite understanding how it is that they fail to come to grips with the technical challenges, because they are referring to that both in the expert declaration and in the reply, that you argue technical challenges and you're mistaken. I mean, what's the matter with that? Well, because they don't grapple with it, right? They say in a conclusory fashion that a PZITA would have been able to handle the technical deal with the technical challenges, right? And they say that primarily in the section of whether the substance of what they said is adequate, not a question of whether they adequately cited to the thing. I just don't understand why it is that they didn't make or how you can say that they didn't make the argument. They may be unconvincing, but I think they made the argument that you argue there's no reasonable expectation of success because of technical difficulties, and that's not correct. Well, so I don't believe we say they didn't make the argument. What we say is that they failed to adequately support it, and that's what the board found as well, and that finding is reviewed for substantial evidence. And they're not actually making a substantial evidence attack on the board's conclusions here. But what we say is that if you look at the four paragraphs that they actually cited, the first two, 68 and 69, only proffer essentially attorney argument that is not applicable here, and the remaining two paragraphs look to and, you know, make the argument that in effect there's no motivation to combine because they point to, you know, the purported benefits of combining Rowley and Byrne. There's one sliver in those four paragraphs which is an attempt to address motivation to combine, and here they don't actually proffer evidence of an attempt to address reasonable expectation of success. They don't actually proffer evidence supporting a finding of reasonable expectation of success. All they do is they take a shot at Dr. Kuklev's, that's Smart Mobile's experts, one portion of his testimony as to why there was no reasonable expectation of success, and that is dealing with the number of processors that are required by the Rowley reference. Now, Dr. Kuklev submitted, you know, several paragraphs of testimony in his declaration as to why the challenges, the technical challenges of implementing the Rowley-Byrne combination would have been beyond the skill of a Bazzita as defined by the parties in this proceeding. In response, one of those pointed to all of the components that would have to be implemented from Rowley in the telephone. And one of the board is saying that the technical difficulties meant that there wasn't a reasonable expectation of success. I read the board as saying that Apple failed to proffer sufficient evidence to make its case on reasonable expectation of success. That's what the board did. The board actually, the board looked at the evidence that Apple proffered, including some of the evidence on motivation to combine. In Dr. Jensen's original declaration, the board looked at all of it and cited to all of it and arrived at the conclusion that Apple had failed to make its case. That's reviewed for substantial evidence. Apple isn't making a substantial evidence attack here. So that conclusion in the record stands. Apple's attack here is an EPA attack. Arguing that the board failed to adequately review its evidence. But the board clearly did. The board discussed all of this evidence in the FWD and the board cited to all of it. Can we turn to the other combination? Certainly, Your Honor. I'm sorry. Just one more point on the Raleigh-Byrne. So my colleague has referred to the purportedly intertwined nature of the motivation to combine and reasonable expectation of success issues here. They're not intertwined. They were addressed separately by both parties in separate sections of briefing and separate sections of the expert declaration. Their citation to the ELECTA case, which was made in their reply brief here, and, of course, to which we haven't had an opportunity to respond. So I just want to take a minute quickly to point out that the ELECTA case is procedurally completely an opposite from the situation we have here. In ELECTA, the board found in favor of the petitioner and found the claims, the challenged claims, to be unpatentable. And the board made a specific finding on motivation to combine, made no finding at all in the FWD on reasonable expectation of success and on appeal. This Court merely looked at that. Given the amount of time we have left, can you turn to the other combination? Certainly. So I think with respect to the issue on motivation to combine, Byrne, with the 748 reference, Judge Toronto, you were asking, well, is there anything in the record supporting the conclusion that there was motivation to, in effect, add a VPN to a combination that already included Byrne's phone with encryption? And there were several citations that were provided. If the panel looks at those citations, what you will find is that there is absolutely no testimony and no evidence supporting the conclusion that there was a motivation to combine a VPN for the security benefits, reported security benefits, or for any other reason, with a combination that included Byrne's phone with its already existing encryption functionality. And there's an important facet of that here, which is that they specifically relied on Byrne's encryption functionality before the Board. And the Board actually, for the purpose of Claim 1, which the Board found unpatentable, the Board pointed to the encryption functionality that Apple had relied on as part of the support for its conclusion that Claim 1 was unpatentable. Right? So they specifically relied on Byrne's encryption. But then with respect to Claim 3, what they're saying is, well, let's just take Byrne completely out of the picture. Right? And let's just look at the network switch box. I don't think they're saying that. I think they're saying that you could have both the Byrne encryption and the security provided by VPN, and that the Board, under the Intel case, was mistaken in not saying that it was a motivation to have both of those. Well, but that would be legal error. Because, as this Court has repeatedly instructed, in evaluating obviousness, one must look to the claim as a whole. And here, the claim as a whole includes not just a network switch box, but also a wireless device that is in communication with the network switch box. Right? So you can't just look at whether there are benefits for other unclaimed devices to add in. But the benefits are not duplicative of VPN and the Byrne encryption. Right? I mean, they're addressing somewhat different things. I disagree, Your Honor. For the purpose of Claim 3, it is duplicative. It is absolutely duplicative. Because Claim 3, again, requires that the wireless device be in communication with. Right? It's not just a system that has a device and a network switch box. In communication with what? In communication with the network switch box.  That's clear. Does it have to be in communication with the virtual network? As a practical matter, yes. Because it has to be in communication with the network switch box, which is configured to join the VPN. Right? So, as a practical matter, the answer is yes. It does have to be in communication with the VPN. And so, it was incumbent upon Apple to proffer evidence of a benefit to a, you know, a combination that included Byrne's encryption, a device with Byrne's encryption. Right? As well as the network switch box, the remote units here of the 748 reference. And they failed to do so. There's nothing in the record supporting a motivation to combine, to, in effect, layer this additional security layer on top of a combination that already provides security. Did your expert address the question of whether the VPN and Byrne encryption were duplicative? No. No, our expert did not specifically address that issue. But, you know, the board's conclusion to that effect is clearly supported by the record. So, with respect to the PACT case, Your Honor, so the PACT case requires that, you know, in addition to being a known technique to address a problem, right, that there has to actually be a proven problem that is addressed by the known technique. And here, again, there's no evidence in the record, there's no testimony, that there was a known problem of security or privacy with respect to a combination that already includes an encryption functionality, such as the one of Byrne's phone. So, for that reason, the PACT case is simply not applicable here. And the board didn't run afoul of the PACT case when it found that Apple had failed to make a showing of motivation to combine because it had failed to address the issue of whether there was a motivation to layer another security functionality on top of Byrne's already existing encryption. Okay. Unless there are further questions, I think we're out of time. Thank you. Thank you, Your Honor. Ms. McComas, you have two minutes. Just very briefly, rebuttal is certainly helpful for you to hone the record and make sure you're citing the court to the right provisions. With respect to the Raleigh-Byrne and the reasonable expectation of success, I would submit to the Court Appendix 2296, and at this point I'm focused in on Paragraph 70. In Paragraph 70 says, in the Patnoner response, Patnoner further attacks the petition's reasonable expectation of success analysis by once again referring to alleged technical challenges in the Raleigh-Byrne combination. And then it cites the portions that are discussing about the size. And as noted, it goes on to say, as noted in the petition, in my original declaration, however, there were abundant advantages, motivations for a once-filled-in-the-art to combine the teachings of Raleigh and Byrne. Dr. Kuklev didn't dispute this. So then that cites, this is in the section on reasonable expectation of success, and it refers back to the broader discussion of combination of Raleigh and Byrne at Appendix 1170 to 1171. And I would also point the Court to the next paragraph, Paragraph 71, which is an express attack on Smart Mobile's arguments regarding the processors in Raleigh and whether or not that would work. The Board did not address those expectations of success. That was error. That requires vacature and remand with respect to the Raleigh-Byrne combination. I just want to make one quick comment with respect to the W0748 and with respect to the question of whether or not there was a teaching of security, but why the combination that includes Byrne would still need security. I would send the Court back to Appendix 2268 at Paragraph 28, which is an express attack on Smart Mobile, which says that a VPN builds a secure tunnel to connect multiple devices as nodes over the public network, like the Internet. That's the overarching network-wide security benefit. What was the citation? Yes, sir. It was at 2268, Paragraph 28. And to be clear, with respect to the W0748 and the first round in our appeal brief, we're only seeking vacature and remand, of course, with respect to Claims 3 and 4. Okay. Thank you. I thank both counsel. The case is submitted.